. Den *v.* Lambert.

---

JOHN DEN on the demise of GEORGE LARASON and WILLIAM L. HOPPOCK
v. GERSHOM LAMBERT.

The order of the Orphans Court directing commissioners to execute good and sufficient conveyances in the law to the purchaser, must be strictly followed; and hence where the order of the court directed the deed to be made to the purchaser, who was W. L. H. and the commissioners made the deed to W. L. H. and G. L. it was declared to be void.

While the court considered that a liberal policy should be extended to these sales by public officers, as well as by private persons, so that the convenience of acting through agents shall be preserved, yet when the law requires that a report of a sale should be made to a court, that they may look into the circumstances, and either confirm it or set it aside, and the sale is not to be available until approved by the court and the conveyance is to be made under the direction of the court, the proper practice unquestionably is, that the true purchaser should be made known, either to the officer (that he may report the facts to the court) or to the court themselves, before the conveyance is ordered, that they may judge of the propriety of making any substitution, instead of leaving that matter to the discretion of the officer.

This was an action of ejectment for lands in the county of

Hunterdon, and tried, before the Chief Justice, at the circuit court for that county,.at the May term, 1829.    The plaintiff was nonsuited ; and on the return of the postea, a rule to shew cause was granted.    All the material facts are fully stated in the opinion of the court delivered by Justice DRAKE.

*Saxton* and *Attorney-General* for plaintiff.

*Wall* for the defendant.

DRAKE, J. This cause came on to be tried at the Hunterdon Circuit in the term of May, A. D. 1829.

The land in dispute was a lot of five acres, being the lower extremity of what was formerly called The Ferry Tract, on the Delaware river, at Lambertsville, in the township of Amwell.

The plaintiff gave in evidence, 1st, An exemplification of a judgment and execution of May term, 1787, in the case of John Ely against John Lambert and Hannah, his wife, admr's. &c. of Benjamin Dennis, deceased.

2d. A deed from Joshua Corshon, sheriff of Hunterdon, to John Lambert, dated the 8th of May, 1790, for 75 3-4 acres of land ; which includes the premises in question.

3d. Several orders of the Orphans Court of the county of Hunterdon, made in 1825 and 1826, after the death of John Lambert, for the sale of his real estate.

4th. A deed from the commissioners appointed by the said Orphans Court to make such sale, to George Larason and William L. Hoppock (the lessors of the plaintiff) dated the first day of March, 1826, for the lot in question.

He also proved by witnesses, that John Lambert, after the sheriff's sale, moved on the property contained in the sheriff's deed, and lived on it one or two years : and after he moved off from it, he rented it out to one George Hoppock.

That Jacob Coryell, who married John Lambert's daughter, was in possession of the five acre lot in question for several years, commencing as early as 1807.    He moved off, leaving his two sons, John L. and Cornelius, in possession.    John L. died in 1815 ; after which, Cornelius remained in possession until his death.

That Jacob Coryell and his son Cornelius, both treated with John Lambert or his heirs, for the purchase of this lot, and otherwise did acts acknowledging their title.

That Gershom Lambert, the defendant, and tenant in possession, claimed the premises by virtue of a deed, which he had obtained from the said Jacob Coryell, in January, 1826, and said that Jacob Coryell claimed it by possession for a length of time.

Objections were raised at the trial to the exemplification of the judgment, and its want of correspondence with the execution ; the validity of which objections, I deem it unnecessary to investigate, as I consider that there was sufficient evidence of title by possession, in John Lambert to have carried the cause to the jury, so far as his title was necessary for that purpose.

The most important objection to the title of the lessors of the plaintiff arose out of the transfer to them of the estate of John Lambert in the premises. The sale was made by the commissioners, on the first day of February, 1826 ; and in the same month, the Orphans Court made their order, reciting the report of the sale of several tracts of land, and among other things, " that lot No. 4 " (the premises in dispute) " was exposed to sale, when William L. Hoppock, bidding one hundred and twelve dollars and fifty cents for the same, and no person bidding more, the same was struck off to him for that sum ; " and concluding as follows : " The court do thereupon allow and approve the said report, and sales, and confirm the same as valid and effectual in law, and direct the said commissioners to execute good and sufficient conveyances in the law to the purchasers, for the said several tracts of land so sold. "

It was objected to the commissioner's deed offered in evidence, that it did not correspond with the order of the court ; the order directing the deed to be made to the *purchaser,* who was William L. Hoppock, whereas the deed was made to him and Larason ; and therefore that it was void, conveying no title to *either* of the lessors of the plaintiff. But even if it conveyed title to Hoppock, yet as the declaration stated merely a joint demise, the plaintiff could not recover on such a demise without also shewing title in Larason. And the defendant thereupon moved

the court that the plaintiff be nonsuited; which was done accordingly.

There can be no doubt that a person may bid at an auction, as well as buy at private sale, either for himself alone, or for himself jointly with another, or wholly as agent for a third person ; and the sale will be valid, whether he bids in his own name, and is set down as purchaser, or in the name of his principal. *2nd Taunton* 38; 4 *do.* 209; 5 *Esp. Rep.* 70 ; 1 *Bos. & Pul.* 323. And if he buy at private sale, or bid for himself at auction, he may afterwards transfer his contract and interest in the property, so that the transferee shall have an equitable title, which a court of equity will enforce, if unexecuted, very generally, as against the vendee who thus transfers his interest, and under circumstances, as against the vendor. *Sugden's Vendors* 130, 1, 2 & 3; *2nd Vez. & Beame* 389; 6 *Vez. jr.* 352 ; 7 *do.* 265 ; 1 *Merrivale* 47. And there are good reasons for the application of the same principles to sales made by public officers, under the direction of a statute, or the order of a court. A policy less liberal might have an injurious operation upon the price of property exposed to such sales.

Upon these principles, if Hoppock bid for himself and Larason, or for himself alone, and afterwards transferred to Larason his interest in one half the property, a court of equity would oblige him to convey the legal title in conformity with such equitable interest.

But what is the evidence of such relationship between Hoppock and Larason? I answer, the acknowledgment of Hoppock. He has accepted a deed from the commissioners uniting Larason with himself in the purchase, and taking the land with him, *as tenants in common.* Hoppock after this, without further proof, cannot deny the fact that Larason is in equity equally entitled with himself. Why then should not this deed, purporting to convey the property, to them, *as tenants in common*, in strict accordance with their equitable interest, be deemed valid ? In a contest between them it should be considered as a conveyance to both, if to either. As between them, it purports to do, precisely what, according to equity, should be done. And to set it aside, in order that a new conveyance may be made from Hoppock to effect the same result, would be idle. I am therefore of

opinion, that if this deed conveyed any title to Hoppock, it did also to Larason, and that there is no good ground to distinguish between them.

But the most serious objection, in my view, still remains ; which is, that the deed was executed by persons having no interest, but acting under a special authority, which was not pursued.

As before stated, I consider that a liberal policy should be extended to these sales by public officers, as well as by private persons, so that the convenience of acting through agents shall be preserved. And where a public officer, as for instance, a sheriff under our laws, conducts a sale throughout, and executes a deed, in the ordinary course of business, without the interference of a court, I see no objection to his recognizing an agency, and making a deed to the real purchaser, or purchasers. But when the law requires that a report of a sale should be made to a court, that they may look into the circumstances and either confirm it or set it aside,—when the sale is not to be available until approved by the court,—and when the conveyance is to be made under the directions of the court,—the proper practice unquestionably is, that the true purchaser should be made known, either to the officer, (that he may report the facts to the court) or to the court themselves, before the conveyance is ordered, that they may judge of the propriety of making any substitutions, instead of leaving that matter to the discretion of the officer. In England, it is necessary that sales made by a master in Chancery should be confirmed ; and it is there usual to substitute one person for another, according to arrangements of parties. This, however, is done upon application to the court, and they will take care to prevent any fraudulent practices,— 2 *Brown Ch. cases* 391 ; 6 *Vez. jr.* 515, 615. But when the sale is confirmed, and an order for a conveyance made, it is the duty of the officer to whom that authority is delegated to pursue it strictly.

The Commissioners in this case reported William L. Hoppock as the highest bidder, and of course, the purchaser. No doubt William L. Hoppock was contemplated in the order of the court. The commissioners conveyed to him and another person. This may appear to be a slight departure from the authority—one

that *should not* vitiate this deed if Hoppock were the only person interested, for the transaction, on its face, carries evidence of his consent. But there is a general interest to be affected by the decision of this question. If this departure from the authority is sanctioned, where shall the limits be set to the discretion of the commissioners? The legislature have intrusted to the Orphans' Court, and other courts having power to order these sales, a controling supervision of them. They have required the proceedings to be reported to them, that they may act upon it before the estate passes by the sale. Many of these sales are of the property of minor children, and it is incumbent on the court to inquire into the facts, if there be the least ground to suspect any collusion, or management, which has prevented the property bringing a fair price. And for this purpose it is important for them to know who are interested in the purchase, and *all* the persons interested. But the report to the court is an idle form, productive only of expense and delay, if the commissioners may report one state of facts, and act upon another, and in this way exercise that discretion which properly belongs to the court. I am inclined to think that law and public policy require that this deed should be declared void ;—And that, therefore, the rule to show cause should be discharged.

EWING, C. J. and FORD, J. concurred.

Rule to shew cause discharged.

CITED in *Jackson* v. *Todd*, 1 *Dutch.* 124 ; *Nortman* v. *Skinner*, 1 *Beasly*, 387.